TOWN OF BOONTON, PROSECUTOR, v. STATE WATER POLICY COMMISSION AND FRANK B. FAY, 3D., RESPONDENTS.

Argued January 17, 1939—Decided February 4, 1939.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and HEHER.

For the prosecutor, *Eugene F. Hillery* and *John Milton*.

For the respondents, *King & Vogt (Harold A. Price)*.

BODINE, J.   This writ of *certiorari* brings up for review a permit for the construction of a dam issued December 8th, 1937, by the State Water Policy Commission.   The permit was first applied for in October of 1936.   The commission's engineers made a complete study of the situation.   Exhaustive tests were made.   The commission itself visited the site to make sure that no detail should be overlooked.   The dam is to be placed about seven hundred feet above the intake of the Boonton reservoir.   Some witnesses placed it closer, but the precise distance seems immaterial on the issues presented.

Many special conditions were imposed by the commission: (1) No bathing or swimming to be permitted in the lake; (2) sewage safeguarded in a way demonstrated by experience to be effective; (3) chlorination facilities to be provided at outlet of water during construction of dam; (4) control of the water in the lake vested in State Water Policy Commission; (5) marginal strip twenty-five feet wide to be maintained around the lake; (6) requirements above mentioned to be made covenants running with the land; (7) no flash board to be placed in the crest of the spillway; (8) construction to be under the supervision of the commission.

There are several lakes above the site of the proposed lake resulting from dams built in the course of Stony Brook. Bathing is permitted in them, having been established long before the creation of the State Water Policy Commission. The lake developments built by the Fays in the vicinity are highly restricted, have beautified the countryside and have resulted in the establishment of desirable bungalow colonies. The purpose of the applicant was to clear up a swamp, which is near to the Boonton-Butler road, and beautify the approach to other family developments. These developments have tremendously increased the township ratables and have made spots of beauty of waste lands. The water from the existing lakes floods the area above the Boonton reservoir and trickles down into that reservoir in a narrow stream. The proposed dam and lake would purify, if need be, the waters above the Boonton intake because of increased storage and delay in flow. Manifestly, swamp land affords a breeding place for mosquitoes and its clearance is of great public advantage. The waters from Stony Brook is not the only source of water supply in Boonton, since other streams feed into the reservoir a natural basin.

The building of the proposed dam would augment the Boonton water supply because it would increase the storage facilities. Mr. Clyde Potts, a distinguished consulting engineer specializing in water supply and sewage, felt, however, that the work could be better done by the town of Boonton because of its power of eminent domain. No steps having been taken by the municipality although the property has

been frequently offered to it, the issue seems to be simply the validity of the award of the permit.

Mr. Cornelius C. Vermeule, an experienced engineer, testifield: "The area to be flooded is now covered with long water grass and reeds standing in the water, to a large extent. Under these conditions my experience, and my research, and familiarity with the literature on the subject shows that the evaporation under present conditions will be very much more than the water surface, free of grass and weeds, and secondly, from a sanitary standpoint, it is very well known that the increased storage improves the quality of water.  *  *  *  When this water leaves the proposed lake it will be in better quality after that lake is built than it is at present."

Mr. J. Russell Riker, a qualified and skilled sanitary engineer, made extensive tests and concluded that there was no chance of pollution from installations to be made in accordance with the order of the commission. The exhaustive examination made by the State Board of Health in July and August of 1937 showed no B coli pollution in Fayson Lake water, and for that matter none in the Boonton reservoir.

The lake lies in the Jersey City watershed. No opposition was offered by that city to the grant of the permit. The town of Boonton makes some claim to a prescriptive right to flood the respondent's land. We think it clear that the State Water Policy Commission is not concerned with and would have no right to determine that question. The permit itself states: "this permit does not give any property rights, either in real estate or material, nor any exclusive privileges; neither does it authorize any injury to private property nor invasion of private rights, nor any infringement of federal, state or local laws or regulations; nor does it waive the obtaining of federal assets, when necessary.

It is apparent from an examination of the whole record that there is no likelihood of danger to public health from the exercise of the permit granted, but in fact the public at large will be benefited by the permitted development. *Jersey City* v. *State Water Policy Commission,* 118 *N. J. L.* 72.

The issuance of the permit was in all respects proper, and the writ will be dismissed, with costs.